## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DON MONTUORI & LOUIS BAYARD, on
behalf of A.M.
     Plaintiffs,

     v.

DISTRICT OF COLUMBIA,
     Defendant.

Civil Action No. 17-2455 (CKK)

## MEMORANDUM OPINION
(September 26, 2018)

Plaintiffs Don Montuori and Louis Bayard, on behalf of their minor child A.M., brought this action against Defendant District of Columbia alleging violations of the Individuals with Disabilities Education Act (the "IDEA"), 20 U.S.C. § 1400 *et. seq.* Plaintiffs initiated this action to challenge the adequacy of a Hearing Officer's Determination that, in part, rejected their claim that Defendant failed to provide A.M. with a free and appropriate public education.

Presently before the Court are Plaintiffs' [13] Motion for Summary Judgment and Defendant's [14] Cross Motion for Summary Judgment.  On August 28, 2018, Magistrate Judge Robin Meriweather issued a Report and Recommendation (hereinafter "Magistrate Judge Meriweather's Report"), recommending that both Plaintiffs' Motion for Summary Judgment and Defendant's Cross Motion for Summary Judgment be granted in part and denied in part. Specifically, Magistrate Judge Meriweather recommended that the Court:

1) Determine that Defendant violated its Child Find obligations by delaying its evaluation of A.M.;
2) Reject Plaintiffs' challenge to the Hearing Officer's rulings regarding Defendant's alleged delay in conducting a functional behavior assessment and alleged failure to update the functional behavior assessment;
3) Reject Plaintiffs' challenge to the adequacy of the February 2016 individualized education plan, including A.M.'s educational placement; and

4) Remand for further administrative proceedings regarding the award of compensatory education.

Report & Recomm. ("R&R"), ECF No. [22], at 45.

On September 11, 2018, Plaintiffs filed objections to Magistrate Judge Meriweather's Report, requesting that the Court grant Plaintiffs' Motion for Summary Judgment in full. On that same day, Defendant also filed an objection to Judge Meriweather's conclusion that Defendant violated the Child Find provision of the IDEA. Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court finds that only one of Plaintiffs' objections has merit. In addition to agreeing with the findings and conclusions in Magistrate Judge Meriweather's Report, the Court also finds that A.M. was denied a free and appropriate education during the first half of the 2016-2017 school year based on Defendant's failure to properly implement A.M.'s Behavior Intervention Plan.

Accordingly, the Court shall ADOPT Magistrate Judge Meriweather's well-reasoned and thorough Report and Recommendation. But, the Court goes further and also concludes that A.M. was denied a free and appropriate education during the first half of the 2016-2017 school year. The Court shall GRANT-IN-PART and DENY-IN-PART Plaintiffs' [13] Motion for Summary Judgment and shall GRANT-IN-PART and DENY-IN-PART Defendant's [14] Cross Motion for

---

[1] Plaintiffs' Motion for Summary Judgment, ECF No. [13]; Defendant's Cross Motion for Summary Judgment, ECF No. [14]; Defendant's Opposition to Plaintiffs' Motion for Summary Judgment, ECF No. [15]; Plaintiffs' Opposition to Defendant's Cross Motion for Summary Judgment, ECF No. [16]; Plaintiffs' Reply in Support of its Motion for Summary Judgment, ECF No. [17]; Defendant's Reply to Plaintiffs' Opposition to Defendant's Cross Motion for Summary Judgment, ECF No. [18]; Plaintiffs' Objections to the Magistrate Judge's Report and Recommendation, ECF No. [23]; Defendant's Objections to the Magistrate Judge's Report and Recommendation, ECF No. [24]; Plaintiffs' Response to Defendant's Objections, ECF No. [25]; Defendant's Response to Plaintiffs' Objections, ECF No. [26]; and Plaintiffs' Reply in Support of Plaintiffs' Objections, ECF No. [27].

Summary Judgment. The Court shall remand for further administrative proceedings regarding the award of compensatory education.

## I. LEGAL STANDARD

Under the IDEA, a "party aggrieved by the findings and decision" of the Hearing Officer may bring a civil action in federal court. 20 U.S.C. § 1415(i)(2)(A). The court "shall receive the records of the administrative proceedings," "shall hear additional evidence at the request of a party," and, "basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." *Id.* at § 1415(i)(2)(C). In a civil action reviewing an IDEA administrative determination, "[a] motion for summary judgment operates as a motion for judgment based on the evidence comprising the record and any additional evidence the Court may receive." *D.R. ex rel. Robinson v. District of Columbia,* 637 F. Supp. 2d 11, 16 (D.D.C. 2009). Where, as here, neither party asks the Court to consider additional evidence, "the motion for summary judgment is simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record." *Heather S. v. Wisconsin,* 125 F.3d 1045, 1052 (7th Cir. 1997) (internal quotations omitted).

The party challenging the Hearing Officer's Determination bears the burden of proof and must "'at least take on the burden of persuading the court that the hearing officer was wrong.'" *Reid ex rel. Reid v. District of Columbia,* 401 F.3d 516, 521 (D.C. Cir. 2005) (quoting *Kerkam v. McKenzie,* 862 F.2d 884, 887 (D.C. Cir. 1989)). The preponderance-of-the-evidence standard in this context does not grant the reviewing court unfettered *de novo* review. *See Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley,* 458 U.S. 176, 206 (1982) ("Thus the provision that a reviewing court base its decision on the 'preponderance of the evidence' is by no means an invitation to the courts to substitute

their own notions of sound educational policy for those of the school authorities which they review."). Rather, courts must give "due weight" to the administrative proceedings. *Id.* "'[F]actual findings from the administrative proceeding are to be considered prima facie correct.'" *Roark ex rel. Roark v. District of Columbia,* 460 F. Supp. 2d 32, 38 (D.D.C. 2006) (quoting *S.H. v. State–Operated Sch. Dist. of Newark,* 336 F.3d 260, 270 (3d Cir. 2003)). Because the IDEA permits a reviewing court to entertain additional evidence at the request of a party, courts employ "'less deference than is conventional' in administrative proceedings." *Reid,* 401 F.3d at 521 (quoting *Kerkam,* 862 F.2d at 887). Nevertheless, the Court should "defer to the [hearing officer's] factual findings unless it can point to contrary nontestimonial extrinsic evidence on the record." *S.H.,* 336 F.3d at 270; *accord Alfono v. District of Columbia,* 422 F. Supp. 2d 1, 8 (D.D.C. 2006); *Armstrong v. District of Columbia,* No. 03-2598, 2005 WL 433448, at *2 (D.D.C. Feb. 24, 2005). Additionally, the Court reviews de novo those portion of a Magistrate's Report and Recommendation to which the parties have objected. *See* Local Civil Rule 72.3(c).

## II. BACKGROUND

Plaintiffs are the parents of A.M., a minor child found eligible to receive special education and related services under the IDEA as a student with a disability. *See* 20 U.S.C. § 1400 *et. seq.* Defendant is a municipal corporation that receives federal funds pursuant to the IDEA in exchange for providing a free and appropriate public education ("FAPE") and is obligated to comply with the IDEA. *See* 20 U.S.C. § 1411, 1412(a)(1)(A).

A.  Statutory Framework

The IDEA mandates that local school districts ensure that "[a]ll children with disabilities residing in the State … regardless of the severity of their disabilities, and who are in need of special

education and related services, are identified, located, and evaluated." 20 U.S.C. § 1412(a)(3)(A). Once such children have been identified, located, and evaluated the school district must provide them with a FAPE. A FAPE is defined as "special education and related services that-- (a) have been provided at public expense, under public supervision and direction, and without charge; (B) meet the standards of the State educational agency; (C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and (D) are provided in conformity with [a child's] individualized education program." *Id.* § 1401(9).

To ensure children with disabilities receive a FAPE, IDEA requires that the school district create and implement an Individualized Education Plan ("IEP"). *Lesesne ex rel. B.F. v. District of Columbia*, 447 F.3d 828, 830 (D.C. Cir. 2006). The IEP is created at multi-disciplinary meetings with a representative of the school district, teachers, parents or guardians, and the child if appropriate. *Honig v. Doe*, 484 U.S. 305, 311 (1988). The IEP sets out the child's baseline educational performance, establishes long-term and short-term goals for improvement, and lays out the specialized educational services the child will require to meet those goals. *Id.* At a minimum, the IEP must be reasonably calculated to provide "personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction." *Rowley*, 458 U.S. at 203-04.

After the IEP is created, the school district must provide the child with an appropriate educational placement that is in line with the IEP. *See Alston v. District of Columbia*, 439 F. Supp. 2d 86, 90 (D.D.C. 2006). A child's appropriate educational placement should be in the least restrictive environment possible. *See Brown v. District of Columbia*, 179 F. Supp. 3d 15, 26-27 (D.D.C. 2016). If the child's appropriate educational placement is in the regular classroom of a public education system, the IEP "should be reasonably calculated to enable the child to achieve

passing marks and advance from grade to grade." *Rowley*, 458 U.S. at 204. But, if there is no public school which is suitable, the school district "must pay the cost of sending the child to an appropriate private school." *Reid*, 401 F.3d at 519 (internal quotations omitted).

B.  Factual Background

After reviewing Magistrate Judge Meriweather's Report, the administrative record, and the parties' arguments, the Court adopts in full Magistrate Judge Meriweather's Factual Background. The Court has considered each of the parties' objections. Considering the objections, the Court concludes that Magistrate Judge Meriweather's recitation of the factual background is supported by the administrative record.

The Court will address more fully one of Plaintiffs' objections to Magistrate Judge Meriweather's factual findings. The Hearing Officer and Magistrate Judge Meriweather both found that, in elementary school, school officials had developed a plan under Section 504 of the Rehabilitation Act to ensure that A.M. was receiving proper accommodations in light of his ADHD diagnosis. R&R, ECF No. [22], 4; AR 8. A 504 Plan is a "legal document designed to plan a program of instructional services to assist students with special needs who are in regular education settings." *Parker v. Friendship Edison Pub. Charter Sch.*, 577 F. Supp. 2d. 68, 71 n.2 (D.D.C. 2008). Plaintiffs object to this factual finding, claiming that A.M. never had a 504 plan during elementary school or any time prior to May 2015. But, Plaintiffs fail to meet their burden of proof in demonstrating that the Hearing Officer's factual finding was erroneous.

There are at least two places in the record indicating that A.M. had a 504 Plan prior to attending middle school. A 2015 comprehensive psychological reevaluation conducted by District of Columbia Public Schools ("DCPS") states that A.M. "has been receiving services through a 504 plan since attending … Elementary School." AR 78. A final eligibility determination report from

DCPS in January 2016 also indicated that A.M. had been receiving "services through a 504 plan for years." AR 122.

Plaintiffs counter that the only evidence that A.M. had a 504 Plan in elementary school comes from DCPS's own records. Plaintiffs argue that, while they had told A.M.'s elementary school about his ADHD diagnosis, there had been no meetings or discussions concerning any sort of specialized education plan. But, given that the 504 Plan is referenced in two different official documents, this testimonial evidence is not sufficient to meet Plaintiffs' burden of proof for overturning a Hearing Officer's factual findings. *See Savoy v. District of Columbia*, 844 F. Supp. 2d 23, 30 (D.D.C. 2012) (explaining that the Court should defer to a Hearing Officer's factual finding absent contrary nontestimonial evidence).

Plaintiffs also argue that A.M.'s middle school sent them an initial 504 plan in May of 2015. Assuming this to be true, this fact does not contradict evidence that A.M. also had a 504 Plan in elementary school. Plaintiffs fail to prove by a preponderance of the evidence that the Hearing Officer's factual finding was in error.

Giving full consideration to the objections on both sides, the Court adopts the Factual Background section of Magistrate Judge Meriweather's Report.

## C. The Hearing Officer's Determination

On May 30, 2017, Plaintiffs filed an administrative complaint on behalf of A.M. against DCPS. AR 371. On June 27, 2017, the Hearing Officer completed a Prehearing Order which identified six issues to be adjudicated:

1) Whether DCPS denied A.M. a FAPE by failing to implement its Child Find Obligation from June 1, 2015, to the present because it failed to perform a comprehensive psychological evaluation and a FBA.
2) Whether DCPS denied A.M. a FAPE by failing to provide him with a Functional Behavior Assessment ("FBA") pursuant to the parent's written request on March 24,

2015, failing to update the FBA appropriately, leading to an ineffective and rarely implemented Behavior Intervention Plan ("BIP").

3) Whether DCPS denied A.M. a FAPE by failing to provide him with an appropriate educational placement from August 2015 to the present by: 1) failing to provide an appropriate therapeutic setting and 2) failing to appropriately and consistently implement the student's behavior plans.

4) Whether DCPS denied A.M. a FAPE by failing to provide him with an appropriate IEP on February 4, 2016, through failing to provide: 1) sufficient hours of specialized instruction, 2) an appropriate educational placement, 3) sufficient behavioral support services outside of the general education setting, 4) an IEP with reasonable, measurable goals, calculated to provide A.M. with appropriately ambitious educational benefit, and 5) an IEP to appropriately address A.M.'s behavioral needs through an appropriate and consistently updated and implemented BIP.

5) Whether DCPS denied A.M. a FAPE by failing to provide him with an appropriate IEP in February 15, 2017, through failing to provide: : 1) sufficient hours of specialized instruction, 2) an appropriate educational placement, 3) sufficient behavioral support services outside of the general education setting, 4) an IEP with reasonable, measurable goals, calculated to provide A.M. with appropriately ambitious educational benefit, and 5) an IEP to appropriately address A.M.'s behavioral needs through an appropriate and consistently updated and implemented BIP.

6) Whether DCPS denied A.M. a FAPE in and/or around January through February 2017 by delegating the educational placement decision to a school team, which did not include the parents or those knowledgeable about A.M.

AR 466.

The Hearing Officer conducted a two-day hearing on August 9, 2017 and August 10, 2017 at which ten witnesses were called. AR 4, 7. On August 27, 2017, the Hearing Officer issued a determination, ruling partly in Plaintiffs' favor. On Issue One, the Hearing Officer concluded that DCPS did not deny A.M. a FAPE by failing to implement its Child Find obligations beginning on June 1, 2015. AR 15. On Issue Two, the Hearing Officer concluded that DCPS did not improperly delay issuance of an FBA, but found that DCPS failed to implement A.M.'s BIP and thereby denied A.M. a FAPE. AR 17. On Issue Three, the Hearing Officer concluded that A.M.'s placement was appropriate prior to January 2017, but was inappropriate after January 2017 because it did not address the change in A.M.'s disability classification and his escalating behaviors. AR 18-19. On Issue Four, the Hearing Officer concluded that A.M.'s

initial, February 2016 IEP was reasonably calculated to provide A.M. educational benefit. AR

20. On Issue Five, the Hearing Officer concluded that DCPS failed to provide A.M. with an

appropriate IEP in January 2017. AR 21-22. Finally, on Issue Six, the Hearing Officer concluded

that DCPS did not deny A.M. a FAPE by delegating education placement to the team. AR 23.

Because Plaintiffs prevailed on Issue Five and partly on Issues Two and Three, the

Hearing Officer concluded that A.M. was denied a FAPE during the last half of the 2016-2017

school year based on an ineffective February 2017 IEP, and unimplemented BIP, and

inappropriate education setting. AR 23-24. As a result, the Hearing Officer ordered DCPS to: 1)

place A.M. at a different school, the Phillips School, for the 2017-2018 school year; 2) convene a

multi-disciplinary team meeting at that school within 30 days of A.M. attending to update his

IEP; and 3) convene a multi-disciplinary team meeting to review and revise A.M.'s IEP 30 days

before the end of the 2017-2018 schoolyear.[2] *Id.*

### D. The Current Proceeding

On November 15, 2017, Plaintiffs filed this action challenging the Hearing Officer's

Determination. The parties cross-moved for summary judgment. This Court then referred this

matter to Magistrate Judge Meriweather for a Report and Recommendation on the parties' cross-

motions for summary judgment. *See* Order Referring Case, ECF No. [19]. Magistrate Judge

Meriweather largely affirmed the determinations of the Hearing Officer. But, Magistrate Judge

Meriweather disagreed with the Hearing Officer on Issue One. Magistrate Judge Meriweather's

Report concluded that DCPS did violate its Child Find obligations by delaying its evaluation of

A.M. R&R, ECF No. [22], 45. Because Magistrate Judge Meriweather found an additional

---

2 In accordance with A.M.'s updated May 2018 IEP, DCPS determined that A.M. should be
placed at the Phillips School, with costs borne by DCPS, for the 2018-2019 school year. *See*
Notice of Withdrawal of One of Pls.s' Reqs. For Relief, ECF No. [20].

violation of IDEA, she recommended that the case be remanded to the Hearing Officer for further administrative proceedings regarding whether the award of compensatory education should be adjusted given the Child Find violation.

A party who wants to object to a Magistrate Judge's Report and Recommendation must file a written objection within 14 days. *See* Local Civil Rule 72.3(b). Plaintiffs and Defendant both filed objections to Magistrate Judge Meriweather's Report within the deadline.

Plaintiffs have four primary objections. First, Plaintiffs argue that Magistrate Judge Meriweather's Report was based upon some incorrect facts unsupported by the evidence in the administrative record. Plaintiffs' Objections to the R&R Issued on August 28, 2018 ("Plaintiffs' Objections"), ECF No. [23], 1. Second, Plaintiffs argue that Magistrate Judge Meriweather erred in determining that DCPS's failure to conduct, and later update, a FBA following a March 2015 meeting did not deprive A.M. of a FAPE. *Id.* Third, Plaintiffs claim that Magistrate Judge Meriweather erred in concluding that A.M.'s initial, February 2016 IEP did not deny him a FAPE. *Id.* at 2. Lastly, Plaintiffs complain that Magistrate Judge Meriweather erred in finding that A.M. was not denied a FAPE based on inappropriate educational placement from August 2015 through January 2017. *Id.*

Defendant has only one objection to Magistrate Judge Meriweather's Report. Defendant argues that Magistrate Judge Meriweather erred in finding that DCPS violated Child Find by delaying A.M.'s evaluation for services under IDEA.

After considering all of Plaintiffs' and Defendant's objections, the Court finds only one of Plaintiffs' objections persuasive. The Court concludes that A.M. was denied a FAPE in the first half of the 2016-2017 school year based on DCPS's failure to implement A.M.'s BIP. The

Court adopts Magistrate Meriweather's Report with this additional conclusion. The Court will address some of the Defendant's and Plaintiffs' objections in turn.

## III. DEFENDANT'S OBJECTIONS

In conjunction with the administrative record and Magistrate Judge Meriweather's Report, the Court has considered all of Defendant's objections. With Defendant's arguments in mind, the Court concludes that none of Defendant's objections are persuasive. The Court will address some of Defendant's objections in additional detail.

Commonly referred to as "Child Find," IDEA requires that policies and procedures are in place to ensure that children "who are in need of special education and related services, are identified, located, and evaluated." 34 C.F.R. § 300.111(a)(1)(i). Defendant objects to Magistrate Judge Meriweather's conclusion that DCPS violated Child Find by failing to timely evaluate A.M. for special education services under IDEA. Specifically, Defendant argues that Magistrate Judge Meriweather failed to give due weight to the Hearing Officer's findings underpinning his conclusion that DCPS did not violate Child Find. According to Defendant, the Hearing Officer found that DCPS was relieved of its duties under Child Find when, during a March 2015 meeting between Plaintiffs and school officials, Plaintiffs agreed to proceed with the 504 Plan process in lieu of initiating IDEA services.

But, Defendant fails to acknowledge that Child Find is an "affirmative obligation" which requires a school to identify, locate, and evaluate students who need special education services. *Davis v. District of Columbia*, 244 F. Supp. 3d 27, 49 (D.D.C. 2017) (quoting *D.L. v. District of Columbia*, 109 F. Supp. 3d 12, 35 (D.D.C. 2015)). Whether Plaintiffs asked the school for an IDEA evaluation or were content with the 504 Plan is not the relevant question. What matters is that, for reasons explained in Magistrate Judge Meriweather's Report, DCPS was on notice of

substantial evidence that A.M. could qualify for special education services. Accordingly, DCPS had a duty to evaluate him for services under the IDEA. The failure to timely do so constitutes a Child Find violation.

After carefully considering the administrative record, Magistrate Judge Meriweather's Report, and all of Defendant's arguments, the Court adopts Magistrate Judge Meriweather's findings and conclusions on DCPS's violation of Child Find.[3]

## IV. PLAINTIFFS' OBJECTIONS

In conjunction with the administrative record and Magistrate Judge Meriweather's Report, the Court has considered each of Plaintiffs' objections. With Plaintiffs' arguments in mind, the Court concludes that only one of Plaintiffs' objections is persuasive: A.M. was denied a FAPE based on DCPS's failure to implement his BIP during the first half of the 2016-2017 school year. This issue was not addressed in Magistrate Judge Meriweather's Report, so the Court adopts the Report with this additional conclusion. The Court will address some of Plaintiffs' objections in additional detail below.

### A. The Delay in Conducting a FBA Did Not Deny A.M a FAPE from the Beginning of the 2015-2016 School Year through November 2015

First, Plaintiffs generally object to Magistrate Meriweather's conclusion that DCPS's failure to conduct a FBA until November 2015 did not deny A.M. a FAPE. Plaintiffs claim that, at a March 2015 meeting, parents and school officials formally agreed to begin the IEP

---

3 Magistrate Judge Meriweather's Report concludes that DCPS's Child Find violation deprived A.M. of a FAPE "between June 2015 and the end of the first half of the 2016-2017 school year." R&R, ECF No. [22], 23. Read in context, it is clear that Magistrate Judge Meriweather actually found a denial of a FAPE based on the Child Find violation between June 2015 and the end of the first half of the 2015-2016 school year when A.M. was evaluated for services under IDEA. Accordingly, the Court concludes that the denial of a FAPE lasted through the end of the first half of the 2015-2016 school year.

evaluation process, which required that an FBA be conducted within 120 days. D.C. Code § 38-2561.02(a)(1). But, the Hearing Officer found that, while the team at the March 2015 meeting decided that an FBA should be conducted, the purpose of the agreed upon FBA was not a formal evaluation of A.M.'s eligibility for IDEA services. Accordingly, there was not a deadline by which the FBA needed to be conducted.

Plaintiffs fail to present record evidence to disturb the Hearing Officer's conclusion. Plaintiffs point to notes taken by an attendee of the March 2015 meeting. But these notes show only that the "IEP Process" was a "Service Consideration." AR 580. The IEP process was not listed under the "Solutions" decided on at the meeting. *Id.* Instead, the solutions focused on a 504 Plan, a FBA, a BIP, and other accommodations. *Id.*

Plaintiffs also support their argument that the March 2015 meeting resulted in a decision to pursue IDEA services with testimony from Plaintiffs' education consultant and statements made by Plaintiffs themselves. AR 971-975; AR 1140-45. The consultant stated that, at the March 2015 meeting, the team decided to "develop a 504 Plan and initiate an IEP process as well." AR 972. But, the consultant was not working for Plaintiffs until May 2015, so her knowledge of the March 2015 meeting is second-hand. AR 971. And, the statements from Plaintiffs are equivocal and do not show by a preponderance of the evidence that the Hearing Officer's understanding of the March 2015 meeting was erroneous. *See* AR 1142 (Plaintiff stated "I think it was the understanding that [the IEP process] was going – that the process was going forward."); *see also* AR 1145 (Plaintiff stated "At this point I guess we were still talking about the 504 Plan even though we had long since asked about an IEP and we hadn't even seen that plan or a timetable for it.").

Magistrate Judge Merriweather also concluded that Plaintiffs' Child Find arguments provide some evidence that the March 2015 meeting did not result in a formal decision to pursue services under the IDEA. In arguing that DCPS violated Child Find, Plaintiffs claim that DCPS did not identify and evaluate A.M. for services until October 2015, implicitly conceding that there was no agreement to evaluate A.M. for IDEA services at the March 2015 meeting. Plaintiffs contest Magistrate Judge Meriweather's characterization of their Child Find Argument. But, Plaintiffs miss the bigger picture. Plaintiffs have not pointed to evidence in the administrative record showing by a preponderance of the evidence that the March 2015 meeting resulted in a formal agreement to initiate the IEP process. Because they have not shown a formal agreement to begin the IEP process, DCPS did not violate IDEA by failing to conduct a FBA within 120 days. Whatever Plaintiffs may or may not have implicitly conceded is irrelevant.

Plaintiffs next contend that, even if the IEP process was not formally initiated in March 2015, the FBA still had to be completed within 120 days of the March 2015 meeting because, at the meeting, the team decided to conduct an FBA. The law in effect at the time required DCPS to "assess or evaluate a student who may have a disability and who may require special education services within 120 days from the date that the student was referred for an evaluation." D.C. Code § 38-2561.02(a)(1). This provision applies only to a school district's initial evaluation of whether a student qualifies for special education services under the IDEA and is triggered by an official referral for such an evaluation. *See Goldstrom v. District of Columbia*, 319 F. Supp. 2d 5, 8 (D.D.C. 2004) (noting that D.C. law requires an initial evaluation within 120 days of a referral). The provision does not require that all tests used to assess a student's educational needs be conducted within 120 days of the initial decision to conduct the test. Because the March 2015

did not result in a referral for A.M. to be evaluated for an IEP and services under the IDEA, the 120-day deadline was not triggered.

Finally, Plaintiffs argue that DCPS's Child Find violation requires a finding that the FBA occurred too late because DCPS was required to evaluate A.M. by June 1, 2015. So, according to Plaintiffs, the FBA should have taken place within 120 days of June 1, 2015. But, the IDEA does not mandate which tests must be used to evaluate a student. As such, a FBA is not required as part of an initial evaluation of a student's disability status. *See D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 251 (3d Cir. 2012) ("[T]he IDEA and its implementing regulations do not require that a school use a functional behavioral assessment when initially testing students for suspecting disabilities."). Even if DCPS had referred A.M. for an evaluation under IDEA by June 1, 2015, that does not necessarily mean that an FBA would have had to have been completed within 120 days. Accordingly, DCPS's Child Find violation does not require a finding that A.M. was denied a FAPE based on the timing of the FBA.

Considering all of Plaintiffs' arguments, the Court agrees with Magistrate Judge Meriweather's finding that DCPS's failure to conduct an FBA prior to November 2015 did not result in the denial of a FAPE.

### B. DCPS's Failure to Update A.M.'s FBA Did Not Deny Him a FAPE from November 2016 to January 2017

Plaintiffs similarly object to Magistrate Judge Meriweather's conclusion that A.M. was not denied a FAPE when DCPS failed to conduct a second FBA between November 2016 and the development of A.M's updated BIP in January 2017. But, Plaintiffs fail to cite any authority that would have required DCPS to conduct a new FBA. The IDEA requires school districts to reevaluate children who have a disability, if needed or on the request of a parent or teacher, at least once every three years but no more than once a year. 20 U.S.C. § 1414(a)(2)(B). This

provision does not require schools to re-do any specific tests as part of the process of updating an IEP or BIP. As such, DCPS's failure to conduct a new FBA when updating A.M.s' BIP did not deny him a FAPE.

Moreover, Plaintiffs' objection on this ground is likely moot. The Hearing Officer already found that A.M. was denied a FAPE during the second half of the 2016-2017 school year, in part, due to DCPS's failure to properly implement A.M.'s BIP. AR 18. And, as will be explained below, this Court finds that A.M. was denied a FAPE during the first half of the 2016-2017 school year due to DCPS's failure to properly implement A.M.'s BIP. *See Infra* IV.E. It is not clear how the failure to update the FBA would impact A.M. beyond the denial of a FAPE based on the failure to implement his BIP, for which he is already going to be compensated.

Considering Plaintiffs' arguments in full, the Court agrees with Magistrate Judge Meriweather's conclusion that DCPS's failure to update A.M.'s FBA did not deprive him of a FAPE.

C. <u>A.M Was Not Denied a FAPE through the Creation of the February 2016 IEP</u>

Plaintiffs argue that Magistrate Meriweather erred in concluding that A.M.'s February 2016 IEP provided him a FAPE. Developing an IEP is a fact-specific endeavor which requires school officials to make prospective judgments about a child's academic and behavioral progress. *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dis. RE-1*, 137 S. Ct. 988, 999 (2017). In reviewing an IEP courts must look at the IEP at the time it was created, not with the benefit of hindsight. *Z.B. v. District of Columbia*, 888 F.3d 515, 524 (D.C. Cir. 2018). The Court concludes that, based on what was known at the time, A.M.'s IEP was "reasonably calculated" to provide "personalized instruction with sufficient support services to permit the child to benefit

educationally from that instruction." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley,* 458 U.S. 176, 203-04 (1982).

In finding that the February 2016 IEP provided A.M. with a FAPE, Magistrate Judge Meriweather showed an understanding of the circumstances leading up to the development of the IEP. As Magistrate Judge Meriweather noted, the administrative record shows that, even after receiving a revised 504 Plan, A.M. continued to struggle academically and behaviorally. R&R, ECF No. [22], 5. A.M. received numerous disciplinary referrals, including referrals to in-school suspension. *Id.*; AR 172-78, 361. The record also shows that Plaintiffs continued reaching out the school, and even hired an educational consultant, in order to get help for A.M. R&R, ECF No. [22], 5; *see e.g.*, AR 606, 609-10.

Magistrate Meriweather also considered the results of tests conducted in preparation for A.M.'s IEP. R&R, ECF No. [22], 31-32. Prior to creating A.M.'s IEP, DCPS conducted a comprehensive psychological evaluation, a FBA, and a social history assessment to determine the causes of and potential solutions for A.M.'s educational failings. AR 77 (comprehensive psychological reevaluation); AR 96 (FBA); AR 103 (social history assessment report). Based on the data from these tests, DCPS recognized that A.M. had oppositional and off-task behavior in the classroom which affected his ability to learn. AR 139. DCPS also recognized that while A.M. was struggling in all his classes, reading and written expression were the biggest areas of concern. AR 137-39.

Magistrate Meriweather considered this evidence and more in evaluating A.M.'s February 2016 IEP. Plaintiffs point to other evidence from the record further demonstrating that A.M. was struggling academically and behaviorally. But pointing to additional evidence of A.M.'s struggles

does not prove that Magistrate Judge Meriweather's Report rested on a fundamental misunderstanding of A.M.'s educational situation.

Despite Magistrate Judge Meriweather's thorough account of A.M.'s educational struggles, Plaintiffs particularly fault Magistrate Judge Meriweather for her alleged reliance on a comment contained in A.M.'s comprehensive psychological reevaluation which stated that A.M. had average intellectual functioning and was "not in danger of failing any of his academic classes so far." AR 77-71. Plaintiffs argue that other record evidence showed that A.M. was failing many of his classes prior to the February 2016 IEP.

The Court notes that communications between Plaintiffs and DCPS, as well as other record evidence, clearly show concern about A.M.'s progress academically and behaviorally. But, it is not clear from the administrative record that A.M. was in imminent danger of failing prior to the creation of his February 2016 IEP. The Analysis of Existing Data from October 2015 states that A.M. had a D+ in Math and a D+ in English/Language Arts. AR 65-67. And, his grades from the first advisory of the 2015-2016 school year show that A.M. had Cs in Math and Science, Ds in English/Language Arts and Spanish, and As in World Geography and Health. AR 9, 78. While these grades are certainly concerning, they do not show that the comprehensive psychological reevaluation erred in stating that A.M. was not in imminent danger of failing. Moreover, Magistrate Judge Meriweather considered the statement in the comprehensive psychological reevaluation as only one piece of a larger picture which clearly showed A.M. to be struggling academically and behaviorally prior to the creation of his February 2016 IEP.

Based on this record evidence, Magistrate Judge Meriweather reasonably concluded that the February 2016 IEP was calculated to enable A.M. to receive educational benefits as required under the IDEA. *See Rowley,* 458 U.S. at 206-07. The IEP concluded that A.M. would need

"significant support to progress with the general education curriculum." AR 137. Accordingly, A.M. received three hours per week of specialized instruction in Reading, and three hours per week of specialized instruction in Written Expression, both provided in the general education setting. AR 140. A.M. also received 120 minutes per month of behavioral support services outside of general education. AR 140. These behavioral services were provided outside of general education because the IEP concluded that A.M. "requires social skills support in a smaller setting." AR 141. More generally, the IEP also noted that A.M. would need frequent reminders to stay on task in all classes and would not be required to read a book at his reading level each month. AR 140.

Plaintiffs claim that DCPS should have known that this IEP was insufficient. Plaintiffs explain that they regularly asked for a new educational setting, new supports, additional service hours, and more. But, the fact that Plaintiffs desired more support does not prove that the IEP was inadequate when created. Similarly, Plaintiffs citations to A.M.'s continued struggles following the implementation of the IEP do not show that the IEP was inadequate when created. While A.M.'s continued struggles under the IEP are relevant, without more evidence, the Court will not employ its hindsight to say that DCPS should have foreseen that the IEP would be insufficient. *See Z.B. v. District of Columbia*, 888 F.3d 515, 524 (D.C. Cir. 2018) (instructing courts not to evaluate IEPs with the benefit of hindsight).

Plaintiffs also claim that A.M.'s lack of progress while on his first BIP should have shown that A.M. required additional behavioral services in his IEP. But, A.M. received his first BIP on January 28, 2016. AR 127. This BIP identified behaviors that were impeding A.M. and proposed strategies to help alleviate those behaviors. *Id*. A.M.'s first IEP was completed approximately one week later on February 4, 2016. AR 134. Given the short time between the development of the

BIP and the development of the IEP, it is not reasonable for Plaintiffs to argue that data from the implementation of the BIP should have informed the creation of the IEP.

Plaintiffs cite two cases, which were decided after the Hearing Officer made his determination, in support of the argument that A.M.'s February 2016 IEP was insufficient. In *Middleton v. District of Columbia*, 312 F. Supp. 3d 113 (D.D.C. 2018), the court determined that DCPS had denied a student a FAPE, in part, because DCPS failed to give the student, who was in a general education setting, an appropriate placement to address his truancy. F. Supp. 3d at 145-48. Similarly, in *Wade v. District of Columbia*, No. 17-1258, 2018 U.S. Dist. LEXIS 142423 (D.D.C. Aug. 22, 2018), the court relied on *Middleton* to hold that DCPS had denied a student a FAPE, in part, because the student's placement in a general education setting did not adequately address his attendance issues. 2018 U.S. Dist. LEXIS 142423, at *26-29. Plaintiffs argue that these cases show that the services provided in A.M.'s IEP were insufficient because A.M. also had truancy issues. Plaintiffs' reliance on these cases is misplaced.

In *Middleton*, the student had previously been placed in a full-time, self-contained class, and DCPS modified the student's IEP, without a guardian or educational advocate present. Under the modified IEP, the student was sent to a school which did not offer the services he had previously received. *Middleton*, F. Supp. 3d at 134-139. In *Middleton*, the court's denial of a FAPE determination heavily relied on the fact that the student's guardian had been prevented from attending the IEP hearing. *Id.* at 134-37. Here, A.M.'s guardians were active participants in his IEP meeting. AR 134. Additionally, in *Middleton*, limitations discussed in the student's prior IEP provided the court with evidence that, at the time the student's IEP was revised, DCPS had information sufficient to show that placement in the general education setting was not reasonably likely to result in educational success. F. Supp. 3d at 137-39.  Such evidence is not present here.

In *Wade*, the student was transferred to a new school so that the student could receive the services required under his IEP. 2018 U.S. Dist. LEXIS 142423, at *4. But, once at the new school, the student's IEP was revised, without the knowledge or consent of a parent or guardian, because the school could not provide the services that the IEP had required. *Id.* at *7. Again, *Wade* is very different than the case before the Court. In *Wade*, the needs identified in the student's prior IEP provided evidence that the revised IEP was not reasonably calculated to provide the student with a FAPE. *Id.* at *25-29. Here, there is no evidence that DCPS had information establishing that A.M.'s February 2016 IEP would be ineffective at its creation. Additionally, in *Wade*, the court found that the student was given less services under the revised IEP because the school could not provide the additional, needed services. *Id.* Here, there is no evidence that resource limitations at A.M.'s school affected the choice of services provided in his IEP.

Considering what was known by the school at the time, without the benefit of hindsight, Plaintiffs fail to prove by a preponderance of the evidence that the February 2016 IEP was unresponsive to A.M.'s needs.

D. <u>A.M Was Not Denied a FAPE based on Inappropriate Educational Placement from August 2015 to January 2017</u>

For many of the same reasons discussed above, A.M. was not denied a FAPE based on inappropriate educational placement from August 2015 through January 2017.

Magistrate Judge Meriweather's Report found that DCPS violated Child Find from June 1, 2015 to the end of the first half of the 2015-2016 school year. This violation was based on DCPS's failure to evaluate A.M. for an IEP until the end of the first half of the 2015-2016 school year. Because A.M. did not have an IEP during this time, his educational placement cannot be challenged under the IDEA prior to his initial IEP in February 2016. *See D.K. v. District of Columbia*, 983 F. Supp. 2d 138, 145 (D.D.C. 2013) (explaining that educational placement means

something "'between the physical school attended by the child and the abstract goals of a child's IEP'" (quoting *Laster v. District of Columbia*, 394 F. Supp. 2d 60, 64-65 (D.D.C. 2005))).

Plaintiffs argue that, even without an IEP, the Court should conclude that A.M. was denied a FAPE based on his educational placement prior to his February 2016 IEP. According to Plaintiffs, if DCPS had evaluated A.M. as Child Find required, A.M. would have had an IEP, and an inappropriate educational placement, from the beginning of the 2015-2016 school year on. But Plaintiffs provide no support for the proposition that educational placement can be challenged under the IDEA without an IEP. Absent any support, Plaintiffs have not met their burden to show by a preponderance of the evidence that A.M. was denied a FAPE based on his educational placement prior to February 2016.

Plaintiffs also complain that A.M. was denied a FAPE based on his educational placement from the time of his initial IEP in February 2016 to the time his IEP was revised in February 2017. Plaintiffs object to Magistrate Judge Meriweather's opposite conclusion. Plaintiffs claim that Magistrate Judge Meriweather improperly considered only whether A.M.'s placement was sufficient or whether he needed a full-time or non-public placement. But, Plaintiffs provide no support for their argument that Magistrate Judge Meriwether considered only this binary choice. Insofar as Magistrate Judge Meriweather's Report emphasized the reasons that DCPS had for keeping A.M. in the general education setting, that is in response to Plaintiffs emphasizing that inclusion in the general education setting was an inappropriate placement.

The Court concludes that Plaintiffs have not established that A.M.'s educational placement under the February 2016 IEP was inappropriate. Given that A.M. had average intellectual abilities and was not failing his classes, it was reasonable for A.M. to remain in the general education setting with weekly services in Reading and Written Expression, his two weakest subjects. A.M.'s

placement was in keeping with IDEA's least restrictive environment provisions, which required DCPS to ensure that, to the maximum extent appropriate, A.M. was educated with children who are non-disabled. *See* 34 C.F.R. §§ 300.114(a), 300.116(a)(2).

### E. A.M. Was Denied a FAPE during the First Half of the 2016-2017 School Year based on DCPS's Failure to Implement his BIP

Plaintiffs argue that the Hearing Officer erred in not providing compensatory education for DCPS's failure to properly implement A.M.'s BIP from its initial creation in January 28, 2016 through the end of the 2016-2017 school year. The Hearing Officer found that DCPS deviated from A.M.'s BIP by addressing A.M.'s behavioral difficulties through disciplinary means and bypassing the special education team. AR 18. But, the Hearing Officer did not specify the time period during which these violations occurred, and he compensated A.M. for the failure to implement his BIP only during the second half of the 2016-2017 school year. AR 23-24. The Court concludes that Plaintiffs have proven by a preponderance of the evidence that A.M.'s BIP was also not properly implemented during the first half of the 2016-2017 school year, in addition to the second half of the 2016-2017 school year, resulting in a denial of a FAPE. This denial of a FAPE was not properly accounted for in the award of compensatory education. But, Plaintiffs have failed to prove by a preponderance of the evidence that the BIP was not implemented from its creation in January 28, 2016 to the end of the 2015-2016 school year.

Plaintiffs have proven by a preponderance of the evidence that A.M. was denied a FAPE based on DCPS's failure to implement his BIP during the first half of the 2016-2017 school year. During an October 2016 meeting, A.M.'s education team acknowledged that he was displaying inappropriate behaviors. AR 11. He had been sent to in-school suspension for one infraction, but the staff directing in-school suspension failed to inform A.M.'s special education team. *Id.* The Hearing Officer found that there was no coordination between the IEP team and the staff member

in charge of discipline at A.M.'s school. AR 12. The staff member in charge of discipline was not aware of A.M.'s BIP and did not use it when addressing behaviors which were a result of his disability. *Id.* Based on this evidence, the hearing officer concluded that, "particularly during SY 2016-2017," A.M.'s negative behaviors "were principally addressed through disciplinary means" including regular in-school suspension. AR 18. The "substantial deviation from the student's special education services … amounted to a denial of FAPE." *Id.*

There is ample evidence in the administrative record showing that DCPS failed to implement A.M.'s BIP during the first half of the 2016-2017 year. A member of A.M.'s special education team at his middle school, Jennifer Abdelmalek, testified that the person in charge of discipline at A.M.'s high school was not aware of the accommodations in A.M.'s BIP and did not implement those accommodations during the 2016-2017 school year. AR 1413-14. She specifically noted an instance when A.M. was given in-school suspension, and she was not informed about it, even though A.M.'s discipline was supposed to go through her. AR 1348-49.

While the administrative record does show that A.M.'s teachers had his BIP and were implementing it, the record also shows that during the 2016-2017 school year, A.M. was regularly disciplined without the knowledge of his teachers or his special education team. AR 1392-94, 1391-92. The repeated use of non-BIP disciplinary tactics constituted a material deviation from A.M.'s services guaranteed under IDEA. *See James v. Dist. Of Columbia*, 194 F. Supp. 3d 131, 139 (D.D.C. 2016) (explaining that IDEA is violated when there is a material deviation from services). This material deviation resulted in a denial of a FAPE during the first half of the 2016-2017 school year.

Insofar as Plaintiffs are also arguing that the Hearing Officer found that the BIP was not implemented from February 2016 to the end of the 2015-2016 school year, the Court concludes

that Plaintiffs have not met their burden of proof. While the Hearing Officer did not present an explicit timeline, the context and sequential structure of his factual findings suggest that his findings on the failure to implement A.M.'s BIP applied exclusively to the 2016-2017 school year. AR 11-14. Additionally, the testimony from Ms. Abdelmalek concerning A.M.'s discipline outside of his BIP accommodations addressed only the 2016-2017 school year. There is some testimony from Plaintiffs and their educational consultant that A.M.'s BIP was not being properly implemented as early as the 2015-2016 school year. *See e.g.*, AR 989, 1265. But, there is also contemporaneous evidence in the administrative record that the BIP was being implemented. Contemporaneous emails between Plaintiffs and A.M.'s middle school from the 2015-2016 school year show that A.M.'s BIP was regularly being considered. *See e.g.*, AR 660 ("The BIP is being implement with fidelity by the 7th grade team and administrators are aware of its requirements."). While the administrative record evidences concern about A.M.'s BIP during the 2015-2016 school year, Plaintiffs do not show by a preponderance of the evidence that there was a substantial deviation from A.M's BIP during the 2015-2016 school year.

After carefully considering the administrative record, Magistrate Judge Meriweather's Report, and all of Plaintiffs' arguments, the Court adopts Magistrate Judge Meriweather's findings and conclusions. But, the Court also goes further in the analysis of Plaintiffs' claims to find a denial of a FAPE during the first half of the 2016-2017 school year based on the failure to implement A.M.'s BIP.

## V. CONCLUSION

For the foregoing reasons, the Court adopts Magistrate Judge Meriweather's Report and Recommendation. The Court also goes further in its analysis to conclude that A.M. was denied a FAPE during the first half of the 2016-2017 school year due to the failure to implement A.M.'s

BIP.  The Court shall GRANT-IN-PART and DENY-IN-PART Plaintiffs' [13] Motion for

Summary Judgment and shall GRANT-IN-PART and DENY-IN-PART Defendant's [14] Cross

Motion for Summary Judgment.  The Court shall remand for further administrative proceedings

regarding the award of compensatory education for the Child Find violation and the denial of a

FAPE during the first half of the 2016-2017 school year.

An appropriate Order accompanies this Memorandum Opinion.


*/s/*
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE